# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

KENNETH J. BOUCHARD,

        Plaintiff,

v.
                                      Case No. 14-14009
                                      Honorable Denise Page Hood

CITY OF WARREN,

        Defendant.

_____/

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS/COMPEL IME [#28] and DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [#33]

## I.     INTRODUCTION

Plaintiff filed this cause of action on October 17, 2014, alleging that he was constructively discharged in violation of the Family and Medical Leave Act ("FMLA"), the Michigan Whistleblower Protection Act ("WPA"), and Michigan public policy.  On June 1, 2016, Defendant filed a Motion to Dismiss Claim for Non-economic Damages and/or to Compel Plaintiff's Attendance at IME ("Motion to Dimiss/Compel IME"). [Dkt. No. 28]  On June 20, 2016, Defendant filed a Motion for Summary Judgment. [Dkt. No. 33]  The Court held a hearing on both motions on August 24, 2016.  The parties have fully briefed both motions.  For the reasons that follow, the Court: (1) denies Defendant's Motion to Dismiss/Compel IME; and (2)

denies in part and grants in part Defendant's Motion for Summary Judgment.

## II.     BACKGROUND

Plaintiff was hired by Defendant as an Assistant Planner in 2011. In July 2013, he was promoted to City Planner 1. His immediate supervisor was Planning Director Ronald Wuerth ("Wuerth"). On September 24, 2013, Plaintiff, without authorization or approval from Wuerth appeared at City Council meetings and assisted City Councilwoman Kelly Colegio ("Colegio") in a Powerpoint presentation ("PPP") that raised questions and concerns about the appropriateness or legality of Defendant's (or some of Defendant's departments') policies, rules, and procedures in dealing with certain properties. According to Wuerth, the meeting was "infamous." Dkt. No. 38, Ex. 1 at 55. The concerns expressed at this presentation were similar to those expressed by Plaintiff in an email sent a day earlier (September 23, 2013) to Richard Sabaugh, Defendant's Director of Public Service; Mayor James Fouts; and Greg Paliczuk, Building Department Director. Dkt. No. 38, Ex. 7. According to Wuerth, a parade of people, including Mayor Fouts and Sabaugh, came to Wuerth's office to complain to him about Plaintiff's participation in the presentation, and they were "pretty f*@king upset." Dkt. No. 38, Ex. 1 at 13, 20, 46.

On September 27, 2013, Wuerth met with Plaintiff, and Wuerth told Plaintiff that what he did was inappropriate and that Plaintiff should have brought the issues

raised in the PPP to him and the Mayor instead of Warren City Council. Dkt. No. 33,

Ex. D at 33, 35.  Wuerth told Plaintiff to stay out of the business of other departments,

stay focused on planning work, and stay above the issues. Dkt. No. 33, Ex. C at 58-59,

62, 73-78, 94, 108.  For more than 50 minutes, Wuerth met with Plaintiff, during

which time Wuerth cursed, berated, and yelled at Plaintiff. Dkt. No. 38, Ex. 9 and 10.

In the meeting or since, there is evidence that Wuerth communicated:

- Plaintiff's job was in danger because of his participation  in the presentation. Dkt. No. 38, Ex. 1 at 24.

- Funding for the Planning Department, including Plaintiff's position, was in jeopardy. *Id.* at 24-25.

- Plaintiff would face repercussions with regard to his job. *Id.* at 26.

- Everybody is coming at you (Plaintiff). Dkt. No. 38, Ex 10 at 14.

- Plaintiff would be on probation and it would be extended. *Id.* at 18, Dkt. No. 38, Ex. 1 at 24, 42.

- For the first time in Plaintiff's tenure, he would be given a performance evaluation. Dkt. No. 38, Ex. 1 at  41.

- Plaintiff would experience "blowback" as a result of his actions. *Id.* at 39-40.

- Wuerth was not surprised that Plaintiff was already experiencing "blowback." *Id.* at 44.

- Wuerth was not surprised that Plaintiff was getting the silent treatment. *Id.* at 44-45.

- Plaintiff would never again present to City Council. *Id.* at 33.

3

- "I had the Mayor stop me in the f#*king hallway and for the third time he said, 'This is'---he is very upset. I wouldn't say what he said. This is what I've been getting." Dkt. No. 38, Ex. 1 at 45; Ex. 10 at 25.

- If the Mayor would have seen the presentation in advance he would have said "No, this isn't going to city council. We don't put this up before the public like this." Dkt. No. 38, Ex 10 at 7.

- Plaintiff was banned from Sabaugh's Public Service Division (a division consisting of 9 departments and crucial to Plaintiff's ability to do his job). *Id.* at 39.

- It was not relevant that Plaintiff had presented truthful information at the City Council Meeting. *Id.* at 25.

- Wuerth questioned why Plaintiff worked at the City of Warren if he was concerned about illegal conduct. *Id.* at 41.

- Wuerth did not "give a shit" about rumors of illegal conduct at the City of Warren and "doesn't care if he sees people passing money to each other in the hallway." *Id.* at 40.

- Regarding some of the materials that Plaintiff prepared for the City Council meeting "the only problem with the map is that it went out to the public." *Id.* at 43.

- Wuerth would have ordered Plaintiff not to participate in the presentation. *Id.* at 26.

- Any material that goes to City Council must be pre-approved by Fouts. *Id.* at 27.

- The mayor can prohibit a member of City Council from bringing information to the public. *Id.* at 28.

- Plaintiff should be doing only work assigned to him by Wuerth, "not indulging in the concerns of the City." *Id.* at 35.

4

- As a result of his presentation, the building department had f*#king zero feelings toward Plaintiff. *Id.* at 37.

- Wuerth had never "seen anything like this before" except for an incident where a prior City Planner, Dan Smith, was removed from his position and assigned to drive a truck as a result of upsetting management. *Id.* at 38.

- Plaintiff had lost Wuerth's and Fouts' support. *Id.* at 23.

On October 14, 2013, Plaintiff attended a City Council Meeting of the Whole, at which Sabaugh stated, in part:

> [W]hen one is attacked[,] the team attacks back as a group. . . [A] member of the planning staff who coincidentally received a $16,000 pay raise in the last budget year, decided to criticize the building department and the property maintenance saying that the departments discriminated in terms of who was [cited] for blight. . . . Any attack on the administration is an attack on the Mayor . . .

Dkt. No. 38, Ex. 11 at 556-57.  It is undisputed that Plaintiff had received a $16,000 pay raise in the prior budget year.  Plaintiff maintains that he received the "silent treatment" on a continuing basis for the duration of his employment by the Defendant.

On or about May 12, 2014, Wuerth asked Plaintiff to make copies of copyrighted architectural plans. Dkt. No. 38, Ex. 1 at 57-59.  Plaintiff contacted Roxanne Canestrelli, an attorney for Defendant ("Canestrelli"), to determine whether the copyright holder's permission was required to copy the architectural plans, and Canestrelli advised Plaintiff that such permission in writing was required. Dkt. No. 38, Ex. 12.  Plaintiff advised Wuerth of the need to obtain permission from the copyright

5

holder before copying the architectural plans and why.  In response, Wuerth: (1) told Plaintiff that Plaintiff wasn't allowed to ask questions of the legal department;" (2) told Plaintiff it was "F*@king wrong" for Plaintiff to have gone to Castrenelli; and (3) suspended Plaintiff for one day without pay for refusing to copy the architectural plans. Dkt. No. 38, Ex. 1 at 58-63; Ex. 13.

On May 14, 2014, Wuerth formally reprimanded Plaintiff regarding an incident involving Plaintiff speaking with Karen Hummel, an employee in Defendant's Public Service Department ("Hummel").  Hummel reportedly felt harassed by Plaintiff's conduct at some point in May 2014. Dkt. No. 33, Ex. A at 536; Ex. D at 52; Dkt. No. 38, Ex. 14.  Although Defendant details in its brief the conduct of Plaintiff that reported by Hummel, Dkt. No. 33, PgID 398, Wuerth did not investigate the alleged complaint or write Plaintiff up for harassment; instead, Wuerth wrote Plaintiff up for engaging an employee of the Public Service Department in non-work-related conversations. Dkt. No. 33, Ex. A at 536; Ex. D at 52.  On May 16, 2014, Plaintiff prepared a letter contesting Wuerth's discipline and sent it to Mayor Fouts, Sabaugh, Wuerth, Phillip Easter, Defendant's Human Resources Director ("Easter"), Greg Paliczuk, Director of Property Maintenance & Building Inspection ("Paliczuk"), Dave Klein of AFSME Local 1917, and David Griem, the City Attorney ("Griem"). Plaintiff did not receive a response to the letter.

6

On May 28, 2014, Wuerth asked Plaintiff to make a copy of a public subdivision plat, and Plaintiff refused because it was "wrong" and he felt he was being set up. Dkt. No. 33, Ex. C at 87-88. Wuerth sought Easter's assistance as to "what to do with" Plaintiff. Dkt. No. 33, Ex. D at 79. On May 29, 2014, a meeting occurred at which Plaintiff, Easter, Wuerth, and representatives of Local 1917 were present. According to a letter later drafted by Easter, "Barely after the meeting began, [Plaintiff] became obviously distressed, and indicated that you were not going to participate in the discussion, and you got up, left the meeting, and in fact left your job and the building for the remainder of that work day, and most of the next work day." Dkt. No. 33, Ex. A, PgID 432; Dkt. No. 38, Ex. 17, PgID 1025. Plaintiff states that he left because he "didn't trust anyone in the room" and "pulled himself out of a very stressful situation." Dkt. No. 33, Ex. C at 94-96.

On June 18, 2014, Wuerth prepared a letter to Plaintiff advising Plaintiff that he was being suspended without pay for one day on June 24, 2014, for insubordination for failing to make the copy of the public subdivision plat on May 28, 2014. Dkt. No. 33, Ex. A, PgID 435. On June 19, 2014, Plaintiff emailed Mayor Fouts and copied numerous others, including Wuerth, Easter and Griem. In that email, Plaintiff attached a letter contesting the substance of Wuerth's letter and concluded by stating, "Due to the extremely stressful nature of all of this and to

7

protect my own health, I am going to utilize comp time to go home and try to relax. I will return to work as soon as I can." Dkt. No. 33, Ex. A, PgID 436.  On June 20, 2014, Easter prepared a letter that he emailed to Plaintiff and copied the same persons Plaintiff had in his June 19, 2014, letter. Dkt. No. 33, Ex. A, PgID 431-33; Dkt. No. 38, Ex. 17.  Easter wrote, in part, "You[r] ongoing apparent inability to work productively and effectively with your supervisor, and at least two instances of having to leave the work place due to "stress" is a matter of great concern to me." Dkt. No. 33, Ex. A, PgID 433; Dkt. No. 38, Ex. 17, PgID 1026.  Easter advised Plaintiff that before he returned to work, Plaintiff would have to see a physician for a "fitness for duty evaluation" and be cleared by that doctor before returning to work. Dkt. No. 33, Ex. A, PgID 431-33; Dkt. No. 38, Ex. 17.  Plaintiff has acknowledged that he had heard that Defendant "send[s] people for fitness for duty evauluations." Dkt. 33, Ex. C at 96.

On June 21, 2014, Plaintiff submitted a doctor's note indicating that he would be off work from June 23 to July 6, 2014, Dkt. No. 33, Ex. A, PgID 434, and on July 2, 2014, he requested leave under the FMLA. Dkt. No. 33, PgID 437-43.  On July 3, 2014, his FMLA leave request was granted for June 23 through July 7, 2014, with further notice that it would be extended upon further physician approval and a reminder that he would need to undergo a "fitness for duty" evaluation before

returning to work. Dkt. No. 33, Ex. A, PgID 444-45.  Plaintiff's FMLA leave was later

extended through August 11, 2014. Dkt. No. 33, Ex. A, PgID 449-50.

On June 25, 2014, Plaintiff's Union submitted a grievance concerning both the

written reprimand issued by Wuerth on May 14, 2014 and the one-day suspension

issued June 18, 2014.  On August 1, 2014, Plaintiff submitted a letter to Easter: (a)

detailing a number of reasons he felt he had been harassed or retaliated against based

on his participation in the PPP on September 24, 2013, and (b) concluding that

because he had "absolutely no reason to believe this harassment will cease [and

having] seen no evidence that [Defendant] will take any action to end the unlawful

behavior of high ranking City employees. . . It is with great regret that I am forced to

resign my position effective August 1, 2014." Dkt. No. 38, Ex. 20.

On October 17, 2014, Plaintiff filed a three-count Complaint in this Court, and

amended it on December 22, 2014.  Plaintiff alleges that he was terminated in

violation of: (1) the FMLA (Count I); (2) public policy (Count II); and the WPA

(Count III).

## III.   ANALYSIS

## A.   Rule 56

Rule 56(a) of the Rules of Civil Procedures provides that the court "shall grant

summary judgment if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.

P. 56(a). The presence of factual disputes will preclude granting of summary

judgment only if the disputes are genuine and concern material facts. *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is

"genuine" only if "the evidence is such that a reasonable jury could return a verdict

for the nonmoving party." *Id.* Although the Court must view the motion in the light

most favorable to the nonmoving party, where "the moving party has carried its

burden under Rule 56(c), its opponent must do more than simply show that there is

some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co.*

*v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S.

317, 323-24 (1986). Summary judgment must be entered against a party who fails to

make a showing sufficient to establish the existence of an element essential to that

party's case, and on which that party will bear the burden of proof at trial. In such a

situation, there can be "no genuine issue as to any material fact," since a complete

failure of proof concerning an essential element of the nonmoving party's case

necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23. A

court must look to the substantive law to identify which facts are material. *Anderson*,

477 U.S. at 248.

**B.     WPA Claim**

10

Defendant argues that there is no evidence that any of its employees retaliated against Plaintiff following the September 24, 2013 meeting. Defendant maintains that:

> After the City Council meeting on October 14, 2013, the matter died. No negative actions were taken against [Plaintiff], he continued his job with his regular assignments, and suffered no loss of pay, position, or benefits. No one criticized his performance or spoke negatively about him until seven months later when he (1) scared Hummel and received a written reprimand; and (2) refused to copy the plat and received notice of a one-day suspension. Both of these incidents were still subject to the grievance procedure when [Plaintiff] quit. Both were "mediate actions." Further, both the warning and notice of intent to suspend were issued to [Plaintiff] for legitimate business reasons. The first, because [Defendant] received a harassment allegation about him. The second, because [Plaintiff] refused to do his job as instructed by his Director.

Dkt. No. 33, PgID 405. Defendant argues that Plaintiff suffered no negative consequences for his participation in the PPP. Dkt. No. 43, PgID 1052.

Defendant asserts that Plaintiff's claim pursuant to the WPA fails because: (a) he was not discharged, and (b) he cannot show Defendant's legitimate business reasons were pretext for the actions taken.

Constructive discharge requires a determination that "working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Smith v. Henderson*, 376 F.3d 529, 533-34 (6th Cir. 2004) (quoting *Held v. Gulf Oil Co.*, 684 F.2d 427, 432 (6th Cir. 1982));

*Champion v. Nationwide Security, Inc.*, 450 Mich. 702, 711 (1996) (determination to be made is whether, based on the defendant's conduct, "a reasonable person in his place would feel compelled to resign"); *Policastro v. Northwest Airlines, Inc.*, 297 F.3d 535, 539 (6th Cir. 2002) (citations omitted) (conditions supporting a discharge "must be objectively intolerable to a reasonable person").

The employee's perception must be determined objectively, without consideration of undue sensitivities. *Henry v. Lennox Indus. Inc.*, 768 F.2d 749, 752 n.3 (6th Cir. 1985). And, the employer must have created the intolerable working conditions with the intention of forcing the employee to quit. *Logan v. Denny's, Inc.*, 259 F.3d 558, 569 (6th Cir. 2001) (citation omitted) ("Both the employer's intent and the employee's objective feelings must be examined."). But, "[w]orkplace conduct is not measured in isolation; instead, whether an environment is sufficiently hostile or abusive" must be judged "by looking at all the circumstances." *Faragher v. Boca Raton*, 524 U.S. 775, 787-88 (1998) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

Defendant suggests that Plaintiff's claim of retaliation for his participation in the September 24, 2013 meeting is based on only the following incidents: (a) the September 27, 2013 meeting with Wuerth; (b) the meeting with Sabaugh on October 14, 2013; (c) Sabaugh's comments during the City Council of the Whole meeting on October 14, 2013; (d) the May 14, 2014 formal reprimand for harassing Hummel; and

(e) the notification of the one-day suspension given to Plaintiff on June 18, 2014. Dkt. No. 33, PgID 403-04. Defendant also contends that anticipation of adverse consequences does not constitute materially adverse action and that Plaintiff has not offered any evidence that he was subjected to a materially adverse employment action.

The Court concludes that Defendant's perspective is incomplete, as the following evidence is sufficient to create a genuine issue of material fact as to whether Plaintiff was constructively discharged–and constructive discharge certainly constitutes a materially adverse employment action. *See, e.g., Vagts v. Perry Drug Stores*, 204 Mich.App. 481, 488 (1994).

    (1)    The September 24, 2013 meeting with Wuerth, at which Wuerth: (a) angrily lectured Plaintiff; (b) advised Plaintiff that his job was in jeopardy; (c) stated that Plaintiff would experience "blowback;" (d) told Plaintiff that his probation would be extended and his performance would be evaluated for the first time; and (e) told that Plaintiff that he would face repercussions.

    (2)    Plaintiff was ostracized by other employees and given the "silent treatment."

    (3)    The October 14, 2013, City Council of the Whole meeting, at which Sabuagh made remarks regarding Plaintiff, stating that the Public Service Department would attack back and noted Plaintiff's $16,000 pay raise.

    (4)    Plaintiff was asked to make copies of copyrighted documents for which permission to make copies had not been obtained and, according to Plaintiff, he was suspended without pay when he refused to do so.

(5)     Plaintiff was formally reprimanded by Wuerth for an alleged incident involving Plaintiff; Wuerth did not conduct an investigation.

(6)     Plaintiff was forbidden from talking to employees who worked under Sabaugh.

(7)     Plaintiff was required to undergo and pass a "fitness for duty evaluation" before he could return to work.

Based on the foregoing incidents, the Court finds that Plaintiff has submitted evidence from which a factfinder could conclude that there was retaliation by Defendant (through its employees) to such an extent that constructive discharge is a matter of genuine dispute. *See Champion v. Nationwide Security, Inc.*, 450 Mich. 702 (1996). Defendant's argument in its reply brief that Plaintiff testified that Mayor Fouts and Sabaugh were cordial to him, no one was rude or impolite, and that he was not demoted or reassigned is just that – evidence of the same does not alter that Plaintiff has provided evidence that creates a genuine dispute of material fact.

Defendant asserts that it had legitimate business reasons for issuing the written warning, the notice of suspension, and requiring the "fitness for duty evaluation" before Plaintiff returned to work. The Court agrees. The written warning resulted from Plaintiff allegedly communicating, in some non-work-related manner, with Hummel. The written warning was issued after Plaintiff (admittedly) had been instructed to not engage in non-work related communications with members of the

14

Public Service Department by Wuerth and to not communicate with such employees at all by Sabaugh. Significantly, Plaintiff had been directed not to communicate with those employees before the September 24, 2013 meeting that Plaintiff contends was the impetus for retaliation. The notice of suspension for insubordination is supportable on its face because Plaintiff refused to obey the directives of his Wuerth, his supervisor. Although Defendant advised Plaintiff that he would have to submit to, and pass, a "fitness for duty evaluation" before returning to work, Plaintiff does not dispute that: (1) he had twice in the preceding weeks expressed the need to be off work due to stress, and (2) Defendant has required "fitness for duty evaluations" for other employees.

A plaintiff can establish that a defendant's legitimate, nondiscriminatory reasons are mere pretext for discrimination if Plaintiff can show "that the proffered reason: (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000); *Dubey v. Stroh Brewery Co.*, 185 Mich.App. 561, 565-66 (1990). "The soundness of an employer's business judgment, however, may not be questioned as a means of showing pretext." *Dubey*, 185 Mich.App. at 566. Defendant asserts, without support or further explanation, that "[Plaintiff] cannot establish pretext." The Court disagrees. The formal reprimand of

Plaintiff by Wuerth was, indisputably, issued without investigation. The one-day suspension was, according to Plaintiff, issued for following a City attorney's advice not to copy the architectural plans without permission.[1] Plaintiff contends that Defendant's requirement that he submit to a "fitness for duty evaluation" was pretextual because an employer is prohibited from requiring a medical examination "unless such examination or inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. 12112(d)(4)(A). Plaintiff contends Defendant has not satisfied its burden of showing that requiring him to submit to the fitness for duty evaluation was job-related or consistent with business necessity as there was no evidence that Defendant had a reasonable belief, based on objective evidence, that Plaintiff's behavior threatened a vital function of Defendant's business.

Defendant also argues that Plaintiff cannot establish a causal connection between his purported protected activities and the reprimand, his suspension notice, or the request for evaluation because more than seven months elapsed without incident after the September 24, 2013 City Council meeting. Defendant also argues that Easter

---

[1] The parties dispute which of Wuerth's directives to make copies formed the basis for Plaintiff's suspension. Plaintiff argues that he was suspended for refusing to copy the architectural plans on May 14, 2014, after he sought advice from the City attorney. Defendant argues, and the letter notifying Plaintiff of the one-day suspension states, that Plaintiff was suspended for refusing to make copies on May 28, 2014, an incident involving public subdivision plats. *See, e.g.,* Dkt. No. 43, PgID 1055.

(the Labor Relations department) requested the fitness for duty evaluation without any input from Wuerth or Sabaugh and without knowledge of Plaintiff's conduct at the September 24, 2013 City Council meeting.

Plaintiff counters that if the totality of the circumstances are considered, as the Court must, *see Holmwood v. Pontiac Osteopathic Hosp.*, 2001 WL 1654775 (Mich.App. 2001); *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000), the evidence noted above demonstrates "actual antagonistic conduct and animus."

The Court concludes that there remains a genuine dispute of material fact that precludes summary judgment on Plaintiff's WPA claim.

## C.    Public Policy Claim

A discharge may be against public policy if: (1) the employee is discharged in violation of an explicit legislative statement prohibiting discharge of employees who act in accordance with a statutory right or duty, (2) the employee is discharged for failure or refusal to violate the law in the course of employment, and (3) the employee is discharged for exercising a right conferred by a well-established legislative enactment. *Edelberg v. Leco Corp.*, 236 Mich.App. 177, 180 (1999) (citation omitted); *Garavaglia v. Centra Inc.*, 211 Mich.App. 625, 629-30 (1995).  Plaintiff contends that he was discharged for failure or refusal to violate the law when he would not copy the

17

copyrighted architectural plans, for which he was disciplined and ultimately was constructively discharged.

Defendant first asserts that Plaintiff's public policy claim fails because he was not discharged. This argument fails as it turns on a genuine dispute of material fact – whether Plaintiff was constructively discharged. Defendant also argues that Plaintiff's public policy claim is pre-empted by his WPA claim. Citing *Hilden v. Hurley Med. Ctr.*, 831 F.Supp.2d 1024, 1045 (E.D. Mich. 2011) ("Public policy claims are not sustainable where there is an applicable statutory provision against discharge in retaliation for the conduct at issue."). Defendant asserts that the WPA is the exclusive remedy for a retaliatory discharge when an employee suffers retaliation for reporting a suspected violation of a law, regulation, or rule to a public body, as Plaintiff claims occurred as the result of his participation in the PPP at the September 24, 2013 City Council meeting. *Id.* at 1046. Plaintiff offers no argument to counter Defendant's argument or any case law in conflict with *Hilden*.

The Court concludes that Plaintiff's public policy is dismissed pursuant to the rule of *Hilden*.

**D.     FMLA Claim**

In order to prevail on his interference with a right to take FMLA leave claim

18

under 29 U.S.C. 2615(a)(1), Plaintiff must establish that Defendant interfered with his FMLA right to medical leave or to reinstatement following FMLA leave. *Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003); *Arban v. West Publishing Corp.*, 345 F.3d 390 (6th Cir. 2003). To establish a prima facie FMLA interference claim, Plaintiff must produce evidence of the following elements:

1.  He was an eligible employee;
2.  Defendant is a covered employer;
3.  He was entitled to leave under the FMLA;
4.  He gave notice of his intent to take FMLA leave; and
5.  Defendant denied Plaintiff's FMLA benefits or interfered with FMLA rights to which he was entitled.

*Cavin*, 346 F.3d at 719.

Defendant first contends that Plaintiff's claim that the "fitness for duty evaluation" was requested "to deprive [P]laintiff of his right to reinstatement under the FMLA" must fail because Defendant notified Plaintiff of the evaluation requirement on June 20, 2014, but Plaintiff's request for FMLA leave was not made until July 2, 2016. Plaintiff counters that he gave qualifying notice of his intent to take leave on June 18, 2014, when he sent the email to Mayor Fouts (and others) that he was taking time off "[d]ue to the extremely stressful nature of all of this and to protect my own health, I am going to utilize comp time to go home and try to relax.

19

I will return to work as soon as I can." Dkt. No. 38, Ex. 16. Defendant argues that, because Plaintiff said he was going to utilize comp time, Plaintiff's email was insufficient to give Defendant notice of an FMLA-qualifying serious health condition, particularly because Plaintiff had taken time off on May 29-30, 2014 for stress and because Plaintiff stated he needed "to relax." Defendant further argues that Plaintiff did not have a "serious health condition" pursuant to 29 U.S.C. 2611(11). *See also Patten-Gentry v. Oakwood Healthcare Inc.*, 2015 U.S.Dist.LEXIS 40958, *56 (E.D. Mich. Mar. 31, 2015).

The Court finds that there is a genuine issue of material fact whether Plaintiff gave Defendant notice of his intent to take leave. *See, e.g., Moorer v. Baptist Mem'l Health Care Sys.*, 398 F.3d 469, 487-88 (6th Cir. 2005); 29 C.F.R. 825.301(b) (an employee only must provide the employer with enough information about the leave to enable the employer to designate the leave as FMLA leave). The Court finds that Plaintiff statement that he would "return to work as soon as I can," Dkt. No. 38, Ex. 16, constitutes a question of fact for the factfinder to determine as it relates to notice. That Defendant was requiring Plaintiff to submit to, and pass, a "fitness for duty" evaluation before returning to work constitutes evidence that Defendant, at a minimum, was concerned that Plaintiff suffered from a serious health condition. The Court also concludes that Plaintiff's statement regarding stress and protecting his

health is not as generic as the cases Defendant relies on, namely *Banaszak v. Ten Sixteen Recovery Network*, 2013 U.S.Dist.LEXIS 81671 (E.D. Mich. 2013) (citing *Walton v. Ford Motor Co.*, 424 F.3d 481, 385 (6th Cir. 2005) ("Merely calling in 'sick' without providing more information will not be sufficient notice to trigger an employer's obligations under the FMLA").

Defendant also contends that it had a legitimate concern about Plaintiff's emotional health and whether he posed a "direct threat to the health or safety of other individuals in the workplace." *Bloomfield v. Whirlpool Corp.*, 984 F.Supp.2d 771, 779 (N.D. Ohio 2013). Defendant relies on the holding in *Bloomfield* that an employer may "requir[e] mental and physical exams as a precondition to returning to work." *Id.* at 785. Defendant further argues that an employee seeking to return to work from FMLA is not entitled to "erase all of the events which occurred before the employee went on FMLA leave," *White v. County of Los Angeles*, 225 Cal.App.4th 690, 708 n.18 (2014), such that erratic behavior prior to leave entitled the employer to dismissal of plaintiff's FMLA claim as a matter of law because the plaintiff was only "entitled to be restored to employment, nothing more." *Id.* at 707. Defendant argues that Plaintiff's employment was not terminated because he was asked to have the "fitness for duty" evaluation. Defendant also asserts that Plaintiff never attempted to return to work, but simply quit instead, so Defendant could not have denied him

21

reinstatement.  Plaintiff does not respond to any of these arguments.

Finally, in its reply brief, Defendant argues that Plaintiff's FMLA interference claim is unripe because he never attempted to go back to work.  This argument should fails for two reasons.  First, Defendant did not raise this argument in its motion for summary judgment.  Second, Defendant again ignores that a constructive discharge is a material adverse employment action and that event would preclude the ability to return to work.

Defendant's motion for summary judgment on Plaintiff's FMLA claim is denied.

### E.   Motion to Dismiss/Compel

Defendant moves the Court to dismiss Plaintiff's claim for mental/emotional damages because Plaintiff has not submitted to a mental examination with an "independent medical examiner" ("IME") chosen by Defendant, which Defendant first requested on April 11, 2016 (prior to the May 6, 2016 discovery cut-off).  In the alternative, Defendant moves the Court to compel Plaintiff to submit to a mental health examination with that doctor, Dr. Calmeze Dudley, M.D., whom Defendant would utilize at trial as an expert.  Plaintiff has refused to submit to such an examination with Dr. Dudley because: (1) Defendant did not list Dr. Dudley on its

witness list (or amended witness list); (2) Plaintiff has permitted discovery of his claims for emotional distress; and (3) Defendant has not demonstrated good cause sufficient to compel an IME.

It is undisputed that Defendant did not list Dr. Dudley on its witness list (filed December 1, 2015) or amended witness list (filed December 15, 2015) – or at any point thereafter.  Defendant contends that it was not required to list Dr. Dudley on its witness list because: (1) "[t]here was no deadline to disclose expert witnesses by the Court, and initial disclosures were not exchanged in this case," and (2) pursuant to Rule 26(a)(2)(D), "expert testimony must be disclosed at least 90 days before trial, which [was] not scheduled until September 27, 2016." Dkt. No. 35, PgID 756. Although the Court's scheduling does not specify a date by which "experts" must be listed, the scheduling order expressly states: "**All witnesses to be called at trial** shall be exchanged by December 1, 2015." (emphasis added).  Based on plain English, the Court finds that  "All" witnesses encompasses "expert" witnesses and should rejects Defendant's argument that it was not required to list Dr. Dudley on its witness list. The Court denies Defendant's motion as untimely because Defendant did not identify Dr. Dudley until approximately four months after Defendant was required to do so.

## IV.   CONCLUSION

Accordingly,

23

IT IS ORDERED that Defendant's Motion to Dismiss/Compel IME [Dkt. No. 28] is **DENIED**.

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment [Dkt. No. 33] is **DENIED IN PART** and **GRANTED IN PART**.

IT IS SO ORDERED.

S/Denise Page Hood
Denise Page Hood
Chief Judge, United States District Court

Dated:  March 31, 2017

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 31, 2017, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager

24